UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No.: 3:12-CV-650-PLR-HBG<br>) |
| GROVER NORTON, ROY LEE HARVEY,<br>REBECCA A. HARVEY,<br>ERIC GLEN GALLAHER,<br>DEREK LYNN GALLAHER,<br>DEVEN LEE BERTRAM, and<br>ANDERSON TREAVIN WRIGHT, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case arises out of the death of a patron at the Grill & Pub, a tavern owned and operated by Grover Norton in Harriman, Tennessee. On the evening of July 23, 2011, a patron of the tavern accidently backed his vehicle into another vehicle in the tavern's parking lot. A dispute then arose between several patrons leading to the violent beating death of David Lee Harvey. A wrongful death lawsuit was filed against Norton and others in Roane County Circuit Court. Atlantic Casualty Insurance Company has brought this declaratory action seeking a declaration that it has no duty to defend or indemnify Norton in the Roane County action. Norton has filed a Third-Party Complaint for failure

to procure insurance against AGA Insurance, Inc. The parties have filed cross-motions for summary judgment [R. 22, 33, 56].

Atlantic states that it does not owe Norton a duty to defend or indemnify him in the wrongful death lawsuit. Atlantic asserts that the allegations in the wrongful death lawsuit are excluded from coverage pursuant to the terms of the insurance policy Atlantic issued to Norton including, but not limited to, the policy's "Assault and/or Battery" exclusion. Atlantic moves for an order granting summary judgment in its favor, declaring and decreeing that Atlantic is relieved of all duties and liabilities by reason of lack of insurance coverage to Norton for the incidents alleged in the wrongful death lawsuit. Atlantic further moves the court to prohibit any of the defendants, their attorneys, and their agents from filing or prosecuting any action against Atlantic for insurance coverage for the incidents alleged in the wrongful death lawsuit in any court.

Norton moves for summary judgment against Atlantic on the grounds that the coverage sold to him by Atlantic is illusory; that is, the premium he paid for coverage of his tavern would not pay benefits under any reasonably expected set of circumstances. Norton asserts the policy sold to him would exclude injuries arising out of assaults, batteries, or contributing to the intoxication of any person. Norton operated a tavern where a specific premium was charged due to the fact that 75% or greater of his total annual sales were in alcohol. He argues it is reasonably foreseeable, and in fact, expected that intended injuries arising out of a fight on the premises will take place. Therefore, the exclusions effectively eviscerate the insuring agreement in the policy. Norton moves for an order holding that coverage would apply to the wrongful death lawsuit.

2

Norton has also filed a Third-Party Complaint against AGA Insurance, Inc., alleging that he relied on AGA to exercise due diligence in providing a policy that would protect him for foreseeable perils such as the assault and battery described in the wrongful death lawsuit. Therefore, to the extent that coverage is not available to him under the policy of insurance with Atlantic, AGA should be held liable for any damages assessed against Norton as a result of its intentional or negligent acts, omissions, or misrepresentations related to procurement of coverage for the tavern.

AGA responds that there was no failure to procure insurance in this case, because Norton requested and was provided with property and commercial liability coverage, which clearly indicated an Assault and/or Battery exclusion. By his receipt of the policy, Norton is conclusively presumed to have read, understood, and assented to the terms of the policy.

### I. Applicable Policy Provisions

Atlantic issued a commercial lines insurance policy to Grover Norton d/b/a/ The Grill & Pub. The policy includes the following provisions relevant to whether it provides coverage for the allegations in the underlying wrongful death action:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

3

# EXCLUSION – ASSAULT AND/OR BATTERY

This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury," "property damage," or "personal and advertising injury" arising in whole or in part out of:

a) the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;

b) the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault and/or battery;

c) the negligent (i) employment; (ii) investigation; (iii) supervision; (iv) training; (v) retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above;

d) any actual or alleged injury arises [sic] out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;

e) any actual or alleged injury arises [sic] out of a chain of events which includes assault and/or battery, regardless of whether or the assault and/or battery is the initial precipitating event or a substantial cause of injury;

f) any actual or alleged injury arises [sic] out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury; or

g) claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault and/or battery, theft, or crime.

. . .

3. For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to,

4

injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

**EXCLUSION – LIQUOR LIABILITY**

This insurance does not apply to:

"Bodily Injury" . . . for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person . . . under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of . . . selling, serving or furnishing alcoholic beverages.

## II. Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. Analysis

Atlantic brings this declaratory judgment action, in part, pursuant to 28 U.S.C. § 1332, diversity jurisdiction. In diversity jurisdiction cases, federal courts apply the substantive law of the state in which the court sits. *Erie R. Co., v. Tompkins,* 304 U.S. 64, 78 (1938). The policy of insurance at issue does not contain an enforceable choice of

6

law provision; however, the parties agree that the substantive law of Tennessee applies to the issues in this action.

As a general rule, Tennessee law construes any ambiguities in an insurance policy in favor of the insured. *Griffin v. Shelter Mut. Ins. Co.,* 18 S.W.3d 195, 200 (2000). Yet, if the terms of the policy are clear, the court enforces insurance contracts "according to their plain terms" with the language construed in its "plain, ordinary and popular sense." *Id.* Tennessee courts do not create a new insurance contract for the parties. *Id.*

An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. *Drexel Chem. Co. v. Bituminous Ins. Co.,* 933 S.W.2d 471, 480 (Tenn.Ct.App. 1996). The duty to defend is broader than the duty to indemnify. *Id.* The insured has the burden of proving that his damages are covered by the terms of the policy; the insurer in turn, must establish the applicability of any exclusions on which it relies. *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.,* 225 S.W.3d 482, 487 (Tenn.Ct.App. 2006).

## A.  Assault And Battery Exclusion

The underlying wrongful death Complaint alleges:

> At that time and place aforesaid, Eric Glen Gallaher, Derek Lynn Gallaher, Devin Lee Bertram, and Anderson Treavin Wright, either acting alone or in concert with one another, did unlawfully, negligently, recklessly or intentionally assault and kill David Lee Harvey in the parking lot of The Grill and Pub owned and operated by the Defendant, Grover Norton.
>
> . . .
>
> At that time and place as aforesaid, Grover Norton failed to exercise reasonable care as follows:

7

a. by failing to operate the Grill and Pub and its parking lot in such a fashion so that it would not attract or provide a climate for crime such as was perpetrated on David Lee Harvey as alleged herein.

b. by failing to take reasonable steps to protect David Lee Harvey because he knew or had reasons to know, either from what has been or should have been observed from past experience, that criminal acts against his customers on his premises were reasonably foreseeable.

Atlantic asserts that these allegations fall directly within the language of the policy's Assault and/or Battery exclusion. The court must agree.

Commercial general liability policies "are designed to protect an insured against certain losses arising out of business operations." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.,* 216 S.W.3d 302, 305 (Tenn. 2007). Commercial general liability policies "are divided into several components, including the 'insuring agreement,' which 'sets the outer limits of an insurer's contractual liability,' and the 'exclusions,' which 'help define the shape and scope of coverage' by excluding certain forms of coverage. *Id.*

The policy in this matter contains an Assault and/or Battery exclusion:

This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury" . . . arising in whole or in part out of:
a) the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person.

The claims in the wrongful death action fall squarely under the policy's exclusion. Courts construing similar policy provisions have found similar claims excluded by the policy's Assault and/or Battery exclusion. *See Atlantic Cas. Ins. Co. v. Cheyenne Country,* 515 Fed.Appx. 398 (6th Cir. 2013) (affirming summary judgment to Atlantic

8

based on the same Assault and Battery exclusion that is in the policy *sub judice*); *Certain Underwriters at Lloyds, London v. Patel,* 2011 WL 2182445 (M.D.Tenn. 2011) (granting summary judgment to insurer based on Assault and Battery exclusion); *Atlantic Cas. Ins. Co. v. Harris,* 2010 WL 624198 (S.D.Ill. 2010) (granting summary judgment to Atlantic based on Assault and Battery exclusion); *St. Paul Reinsurance Co. Ltd. V. Williams,* 2004 WL 1908808 (Tenn.Ct.App. 2004) (affirming summary judgment to insurer based on Assault and Battery exclusion).

Norton does not challenge the validity of the Assault and/or Battery exclusion, or contest that it applies to the allegations in the underlying case; instead, he argues that the insurance agent, AGA Insurance Inc., failed to secure proper coverage for his business, and that this failure is attributable to Atlantic, because AGA is the agent of the insurer, Atlantic, and not the insured. The court disagrees.

Under Tennessee law, a cause of action for failure to procure insurance is separate and distinct from any cause of action against an insurer, and the agent, rather than the insurance company, is independently liable. *Morrison v. Allen,* 338 S.W.3d 417 (Tenn. 2011). Norton has filed a Third-Party Complaint for failure to procure insurance against AGA. Norton alleges in his Third-Party Complaint that he assumed he had coverage for assaults and batteries, and he believed he had coverage for the type of incident that is at issue in the wrongful death lawsuit. Norton argues that because AGA did not advise him that assaults and batteries would not be covered, Atlantic is bound to provide him coverage in the wrongful death lawsuit. In support of his argument, Norton relies upon *Allstate Ins. Co. v. Tarrant,* 363 S.W.3d 508 (Tenn. 2012). Norton's reliance upon

9

*Tarrant* is misplaced. In *Tarrant,* the parties disputed whether Tarrant had instructed his insurance agent to transfer a vehicle from a commercial policy with higher limits to his personal policy with lower limits. The Tennessee Supreme Court held, in part:

> This is not a "failure to read" case, but one in which the insured instructed his insurance agent to make a change in the insured's insurance coverage, and the agent made a mistake in carrying out the instruction. As a result, the insured did not receive the coverage he requested. Under these circumstances, it is the insurer who must bear the consequences for the loss, not the insured.

*Id.* at 521.

Here, the facts are distinguishable from *Tarrant*. In his affidavit, Norton does not state that he instructed AGA to obtain a policy with assault and battery coverage, or that AGA made a mistake in carrying out his instructions. Nor does he state that at any time during the 20 years he purchased insurance from AGA, he ever asked AGA to obtain assault and battery coverage for him. Even if the court accepts the allegations in the Third-Party Complaint and the statements in Norton's affidavit as true, AGA was acting as Norton's agent, not Atlantic's. Therefore the alleged actions by AGA do not bind Atlantic to coverage for the allegations of assault and battery in the wrongful death lawsuit. Accordingly, the court finds that the Assault and/or Battery exclusion applies to the allegations in the wrongful death lawsuit, and that Atlantic does not owe Norton a duty to defend or indemnify him in the wrongful death lawsuit. The court will next address Norton's argument that the policy of insurance was illusory.

## B. The Insurance Policy is not Illusory

Norton asserts that the insurance coverage he paid for is illusory because it would not pay benefits under any reasonably expected set of circumstances. The coverage would exclude claims for injuries contributed to by the sale of alcohol or arising out of assaults, batteries, or intentional acts. Norton states that he operated a tavern and a higher premium was charged by Atlantic due to the fact that 75% or more of his total annual receipts were for alcohol sales. He contends that common sense dictates that customers visit a tavern to drink alcohol and it is reasonably foreseeable, and expected, that intended injuries arising out of a fight on the premises would take place. The exclusions in the policy eviscerate the insuring agreement in the policy. Therefore, Atlantic should provide coverage to Norton in the wrongful death lawsuit.

> Liquor liability exclusions are standard in the insurance industry.
>
> Standard commercial general liability policies generally exclude bodily injury or property damage arising from the insured's manufacture, distribution, or sale of alcoholic beverages. Thus, claims based upon the insured's violation of state alcoholic beverages law, negligence in failing to ascertain minor driver's age, failure to warn driver of his or her intoxication and prevent him or her from driving while intoxicated, fall within the exclusion. By specifically excluding coverage for this risk generally, those who want such coverage must specifically request it and pay corresponding additional premiums, thereby allowing the insurer to assess the specific risks based on the nature and location of the business, as well as the general character and history of the insured.

Steven Plitt, *et al.,* 9A *Couch on Insurance 3d* § 129:32 (2008).

The liquor liability exclusion (dram shop exclusion) in Norton's policy with Atlantic is almost identical to other liquor liability exclusions in insurance policies covering establishments which distribute alcoholic beverages. These exclusions have

11

been uniformly found unambiguous and upheld in numerous jurisdictions. *See Nautilus Ins. Co. v. Squaw Bar, Inc.,* 2012 WL 1068767 (N.D.Ill 2012); *Mitzan v. Western Heritage Ins. Co.,* 623 F.Supp.2d 993 (E.D.Mo. 2009); *Essex Ins. Co. v. Café Dupont,* 674 F.Supp.2d 166 (D.C. 2009); *BLG Enter. Inc. v. First Financial Ins. Co.,* 334 S.E.2d 327 (S.C. 1999); *Kelly v. Painter,* 504 S.E.2d 171 (W.Va. 1998); *Abe's Colony Club, Inc. v. C&W Underwriters, Inc.,* 852 S.W.2d 86 (Tx.Ct.App. 1993); *Hartford Ins. Co. of Southeast v. Franklin,* 424 S.E.2d 803 (Ga. 1992); *Micheson v. Izdepski,* 585 N.E.2d 743 (Mass.App.Ct. 1992); *Fraterhal Order of the Eagles Cle Elum, Aerie No. 649 v. Gen. Accident Ins. Co. of Amer.,* 792 P.2d 178 (Wash.App. 1990); *Williams v. U.S. Fidelity and Guar. Co.,* 854 F.2d 106 (5th Cir. 1988); *Sheffield Ins. Co. v. Lighthouse Properties, Inc.,* 763 P.2d 669 (Mont. 1988); *U.S. Fidelity and Guar. V. Griggs,* 491 A.2d 267 (Pa.Super. 1985); *Morrison on Behalf of Morrison v. Miller,* 452 So.3d 390 (La.Ct.App. 1984); *New Hampshire Ins. Co. v. Hillwinds Inn,* 373 A.2d 354 (N.H. 1977);

Norton cites *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.,* 949 F.Supp. 694 (S.D.Ill. 1996) in support of his contention that the liquor liability exclusion renders the policy illusory. Assuming without deciding that a case decided under Indiana law is applicable to the present matter, the holding in *Monticello* is inapposite to Norton's contention. The policy in *Monticello* contained three exclusions: an "assault and battery" exclusion, an "absolute liquor" exclusion, and the so-called "dram shop" exclusion. The Indiana court determined that the "absolute liquor" exclusion was worded so broadly as to exclude coverage for all potential claims and thus was illusory. *Id.* at 702. By contrast, the court stated the assault and battery exclusion and the dram shop

12

exclusion did not render coverage under the policy illusory. *Id.* at 703. The court nonetheless denied the insurer's summary judgment motion because, under Indiana law, once it was determined that the coverage was illusory under the absolute liquor exclusion, the court was required to enforce the reasonable expectation of the insured. *Id.* Disputes of fact regarding the insured's expectations precluded summary judgment. *Id.*

The policy at issue in this case does not include an exclusion comparable to the absolute liquor exclusion that the *Monticello* court determined was illusory. Altantic chose to exclude from coverage bodily injury and property damage by reason of the distribution of alcoholic beverages by Norton's tavern. The language in the policy clearly and unambiguously reflects this exclusion. Thus, the policy is not illusory, and the exclusion should be enforced. In conclusion, the court finds that the policy does not cover the claims in the wrongful death action, and that Atlantic has no duty to defend or indemnify Norton. Accordingly, Atlantic's motion for summary judgment is **GRANTED.**

## C. Procurement/Delivery of Policies

As stated above, a cause of action for failure to procure insurance is separate and distinct from any cause of action against an insurer or a proposed insurer. In a failure to procure claim, "the agent, rather than the insurance company is independently liable." 43 Am.Jur.2d *Insurance* §163 (2003). The insured may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warrant an assumption by the client that he was properly insured in the amount of the desired coverage. *Morrison v. Allen,* 338 S.W.3d 417, 426 (Tenn. 2011) (quoting

13

*Karam v. St. Paul Fire & Marine Ins. Co.,* 281 S.2d 728, 730-31 (La. 1983). An agent or broker is liable for failure to procure "on the theory that he or she is the agent of the insured in negotiating for a policy, and owes a duty to the principle to exercise reasonable skill, care, and diligence in effecting the insurance." *Id.* The elements of a cause of action for failure to procure are: (1) an undertaking or agreement by the agent or broker to procure insurance; (2) the agent's or broker's failure to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly of any such failure; and (3) the agent's or broker's actions warranted the client's assumption that he or she was properly insured. *Id.*

Norton initially talked with Bob Layton, agent for AGA, concerning coverage for his tavern. Norton testified as to his conversation with Layton:

> Q. Mr. Norton, you've told me you primarily talked with Mr. Layton about your coverage, right?
>
> A. Yeah.
>
> Q. And the coverage you got for the Grill & Pub, that was a liability policy, right?
>
> A. Right.
>
> Q. After you first got the first policy through AGA, the liability policy for the Grill & Pub – okay? – did you ever talk to Mr. Layton again about the coverages you were buying.
>
> A. No, not really.
>
> Q. So you talked with him – go ahead. I'm sorry.
>
> A. I told him what I needed.
>
> Q. And specifically, what did you tell him you needed?

14

> A. I needed coverage, liability for the bar and the parking lot.
>
> Q. Okay. That's what you told Mr. Layton?
>
> A. Yes.
>
> Q. Okay. And did he tell you he could help you with the policy:
>
> A. Yeah.
>
> Q. Okay. And he got you a liability policy, didn't he?
>
> A. Yes.
>
> Q. And did you have any other discussions with him?
>
> A. No.
>
> Q. All right. Have you told me about the discussions you had with Mr. Layton concerning the liability coverage for the Grill & pub?
>
> A. Yes.
>
> Q. Did you have any discussions with anyone else at AGA about the liability coverage for the Grill & Pub?
>
> A. No.

Norton asserts that AGA knew or should have known that it was procuring insurance coverage for a tavern and it was reasonable to expect coverage for assault and battery claims.

AGA argues there was no failure to procure insurance because Norton requested and was provided with property and commercial liability coverage, which clearly indicated an Assault and/or Battery exclusion. Upon receipt of the policy, Norton is conclusively presumed to have read, understood, and assented to the terms of the policy.

15

Norton testified he had purchased insurance for his tavern through AGA since approximately 1990. When Norton initially talked with AGA concerning coverage for his tavern, he told the agent he needed "liability coverage for the bar and the parking lot." There were no other discussions concerning coverage for the tavern. Norton did not talk to the agent or anyone else at AGA about obtaining a policy providing coverage for assault and battery, and no one at AGA ever told Norton the policies being purchased would provide coverage for assault and battery. Norton received a copy of the Atlantic policy and later received copies of the policy upon renewal. Norton acknowledged that he did not read the policy. Bob Layton, the agent with AGA who initially procured insurance coverage for Norton, testified that exclusions for assault and/or battery are universal with commercial liability policies, and that each property and commercial liability policy secured through AGA contained a similar exclusion. Joanne Ferrell, who replaced Layton as the agent handling Norton's insurance, testified that policies without an exclusion for assault and battery would be cost prohibitive. Norton testified he never requested "full coverage." Norton further acknowledged that he never specified that he wanted coverage for assault and battery; he thought it would be covered.

Under Tennessee law, an insured, upon receipt of the policy, is conclusively presumed to have read, understood and assented to all provisions of the policy. *Webber v. State Farm Mut. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn. 2001); *DeFord v. Nat'l Life & Accident Ins. Co.,* 185 S.W.2d 617, 621 (Tenn. 1945); *Gen. Am. Life ins. Co. v. Armstrong*, 185 S.W.2d 505, 506 (Tenn. 1945). Norton requested a property and commercial liability policy, and AGA procured a property and commercial liability

16

policy as requested. An insurance agent does not owe a duty to sell customers more coverage than requested or selected. The agent's obligation to the customer ends when the coverage requested by the customer is obtained. *Weiss v. State Farm, Fire & Cas. Co.,* 107 S.W.3d 503, 506 (Tenn.Ct.App. 2001); *Quintanna v. Tennessee Farmers Mut. Ins. Co.,* 774 S.W.2d 630, 634 (Tenn.Ct.App. 1989).

Here, Norton requested AGA procure a property and commercial liability policy for his tavern. In doing so, he did not request "full coverage." He did not request a policy which would provide coverage for liability arising out of assault and/or battery. Norton had no discussions with AGA concerning coverage for liability arising out of assault and/or battery. Norton received a property and commercial liability policy as requested. He was provided copies of his policies, and these policies expressly excluded coverage for liability arising out of assault and battery. Norton is conclusively presumed to have read, understood and assented to those provisions. Although Norton may have assumed the policy procured for him would provide coverage for any and all contingencies, it was an unreasonable assumption and was not based on any representation of AGA. Further, it was an assumption contrary to the language of the policies provided to him. An agent will not be held liable for failure to procure the proper insurance coverage when the client fails to inform the agent about the type of coverage required. *Morrison,* 338 S.W.3d at 451.

Moreover, having received renewal notices and policies over 20 years, detailing the scope of his commercial liability coverage, Norton is presumed, as a matter of law, to possess full knowledge of the coverage provisions, irrespective of whether he actually

17

read the policies. Tennessee law is clear that "in the absence of fraud or mistake, an insured cannot claim that he is not bound by the contract of insurance, or certain provisions thereof, because he has not read it, or is otherwise ignorant of, or unacquainted with its provisions." *Webber v. State Farm Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn. 2001) (quoting *Gen. Am. Life Ins. Co., v. Armstrong,* 185 S.W.2d 505, 506-07 (Tenn. 1945). Indeed, the Tennessee Supreme Court has stated that "the insured is *conclusively presumed* to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy," irrespective of whether the insured actually read, or could read, the insurance contract. *Id.* at 507 (emphasis in original). The court simply cannot accept Norton's argument that his failure to read the renewal policies over the course of 20 years somehow permits him to alter or revise the extent of AGA's obligation. Accordingly, Norton's argument that AGA failed to procure assault and/or battery coverage for his tavern is without merit, and his motion for summary judgment is **DENIED.**

## IV. Conclusion

In light of the foregoing discussion, the court concludes that Atlantic Casualty Insurance Company and AGA Insurance Inc. are entitled to summary judgment. Accordingly,

1. Atlantic Casualty Insurance Company's motion for summary judgment [R. 33] is **GRANTED**. The court concludes that because there is no coverage, there is no duty to defend or indemnify Norton in the underlying wrongful death action. Atlantic is

released of all duties and liabilities to Norton. It is **ORDERED** that any of the parties in the wrongful death action styled <u>Roy Lee Harvey, et. al. v. Eric Glenn Gallaher, et al.</u>, Case No. 12-CV-141, in the Circuit Court for Roane County, Tennessee, are prohibited from prosecuting any actions seeking insurance coverage from Atlantic Casualty Insurance Company for the wrongful death claims.

2. Grover Norton's motion for summary judgment [R. 51] is **DENIED.**

3. AGA Insurance, Inc.'s motion for summary judgment [R. 56] is **GRANTED.**

4. The Clerk of the Court is **DIRECTED** to close the case.

_____
**UNITED STATES DISTRICT JUDGE**